AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| | |
|---|---|
| United States of America<br>v.<br>JAMES DAVID KIRCUS<br><br>*Defendant(s)* | Case No. 2:13-mj-0340-MHH |

FILED
2013 OCT -3 P 2: 32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 12, 2013__ in the county of __Jefferson__ in the __Northern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 USC Section 5861(d) | Unlawful possession of an unregistered firearm, that is, a destructive device |

This criminal complaint is based on these facts:

See attached affidavit of ATF Special Agent Jay Bagwell

☑ Continued on the attached sheet.

_____
*Complainant's signature*

ATF Special Agent Jay Bagwell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/03/2013__

_____
*Judge's signature*

Madeline H. Haikala, Magistrate Judge
*Printed name and title*

City and state: __Birmingham, Alabama__

**AFFIDAVIT**

FILED
2013 OCT -3  P 2: 32

I, Jay G. Bagwell, being duly sworn, state the following:

I am a Senior Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed for fourteen (14) years. I have completed both Criminal Investigator School and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. Furthermore, I have completed approximately thirteen (13) weeks of additional specialized training regarding explosives and improvised explosive devices, and I have been designated by the ATF as a Certified Explosives Specialist (CES) for two years. One of my primary duties as an ATF Agent is to enforce violations of federal firearms and explosives laws.

1. As a result of my training and experience, I am familiar with the following federal firearms and explosives laws:

   Title 26, U.S.C. § 5861 (d) -

   It shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

2. According to Title 26, U.S.C. § 5845 (a) (8), a "firearm" means a "destructive device". A "destructive device" is defined in Title 26, U.S.C. § 5845 (f) as any explosive, incendiary, or poison gas bomb.

3. On August 12, 2013, at approximately 13:30 hrs FBI Special Agent Chris Skillman alerted me to a bomb squad deployment to B&D Auto Salvage, located at 3055 35th Avenue North, Birmingham, AL. I immediately responded to this location and met with members of the Birmingham Police Bomb Squad.

4. Earlier that day, employees at B&D Auto had discovered several suspicious items in and around the workspace of an employee who was known to have made bombs in the past. Employees reported that the suspicious items were large metal automobile airbag cylinders that had been altered by James David KIRCUS (W/M, DOB: 03/01/1959, SSN: 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). KIRCUS was convicted in the Northern District of Alabama in 2007 for possession of firearm by convicted felon, as well as manufacturing/possession of unregistered destructive devices (pipe bombs).

5. Through interviews on the scene, I determined that KIRCUS had not shown up for work that day, and that he was living in a federal "half-way" house named Keeton Corrections, which is located at 1609 7th Street North, Birmingham, AL. I then contacted the U.S. Probation Office in Birmingham and confirmed KIRCUS's status as a federal inmate. The U.S. Probation Office also confirmed that KIRCUS was living at the Keeton Corrections half-way house.

6. I, along with ATF Group Supervisor Gabriel Mamock, proceeded to Keeton Corrections to make contact with KIRCUS. Upon arrival, we were met by David Lowe, who is the

1



director of the facility. Mr. Lowe stated that KIRCUS had violated the conditions of the half-way house the previous Saturday when lied about leaving the facility for work. Mr. Lowe then brought KIRCUS to his office to meet with me.

7. When KIRCUS arrived, I advised him that the bomb squad was at his work space examining the modified airbag cylinders. KIRCUS admitted that he has previously removed the airbag cylinders from vehicles and detonated them for fun. KIRCUS also stated he has removed the explosive propellant from airbags to light it on fire or to detonate it.

8. Following this interview, I contacted the bomb squad technicians on scene at B&D Auto and relayed this information. Additionally, I contacted the U.S. Bureau of Prisons supervisor for the same purpose. A "pickup order" was immediately issued for KIRCUS, and he was transported to the Cullman County Jail by the U.S. Marshal's Service. A search of KIRCUS's room at the half-way house was initiated by the staff. Two items of contraband were found as result of the search: a cellular telephone, and a soldering iron.

9. Meanwhile, I returned to B&D Auto and conferred with FBI Agent Chris Skillman, who had interviewed Daniel Partridge, an employee at B&D Auto. Mr. Partridge stated that KIRCUS had recently asked him to purchase a bomb-making book on the internet, adding that KIRCUS had made numerous statements about building bombs. Mr. Partridge stated that KIRCUS told him he knew about wiring a timer into a bomb, as well as wiring a cell phone so the bomb could be used to kill someone in a different city. Mr. Partridge also stated that KIRCUS had recently blown up two airbag cylinders in his presence on the property. Mr. Partridge stated he had seen other airbag cylinders inside KIRCUS's toolbox recently. According to Mr. Partridge, KIRCUS had recently stolen a soldering iron from B&D Auto and took it to the half-way house. KIRCUS also tried to enlist the help of Mr. Partridge in obtaining firearms so he could "kill the two people who turned him in last time," namely, his sister and his ex-wife. On more than one occasion, Mr. Partridge witnessed KIRCUS attempt to answer classified ads in the "Thrifty Nickel" newspaper with the intention of purchasing a firearm.

10. I next assisted the Birmingham Bomb Squad with the collection of evidence. As a result of the bomb squad response, the following items were removed from the scene by utilizing a bomb containment vessel and transported to the Birmingham Police firing range in Trussville, AL:

    - Two (2) airbag cylinders that showed indications they had been altered
    - Two (2) airbag cylinders that appeared to be unaltered
    - One (1) soda bottle containing an unknown red viscous liquid

11. In addition to these items, I seized four documents showing indications of ownership from a toolbox in the work area used by KIRCUS. These documents include a Birth

2



Certificate, Motorcycle Title, a Bill of sale, and Alabama Public Safety documents all bearing the name of James KIRCUS. Everyone departed B&D Auto on August 13, 2013 at approximately 0030 hours.

12. On August 13, 2013, at approximately 0800 hours, I met the Birmingham Police and Jefferson County Sheriff's Office Bomb Squads at the firing range and began "render safe" procedures on the suspected IEDs. An x-ray of one of the altered airbag cylinders confirmed that it had been modified to be an improvised explosive device (IED). The IED was rendered safe by use of a remote control robot. The airbag cylinder had one end that was sealed by using some form of adhesive bonding. Upon visual inspection, I concluded that the other end had been cut open with a saw. The only items remaining inside the cylinder were the detonator and a large amount of airbag propellant that had been crushed into a powder and placed back into the device.

13. After the Birmingham Police Bomb Squad completed the render safe procedures, I then collected the following items which are being retained as evidence:

    - One (1) bag containing red-colored crushed airbag propellant
    - Two (2) glass vial samples of red-colored crushed airbag propellant
    - One (1) soda bottle containing a red-colored viscous liquid
    - One (1) sample of red-colored viscous liquid
    - One (1) bag containing red-colored solid airbag propellant disks
    - One (1) airbag cylinder with detonator that contained the crushed propellant
    - One (1) airbag cylinder with detonator that contained the solid propellant disks
    - Two (2) airbag cylinders that appeared to be unaltered

14. The evidence was transported to the ATF Explosives Evidence Storage Magazine located in Hoover, AL. Later, I submitted this evidence to the ATF Forensic Laboratory in Atlanta, GA, for analysis.

15. On August 15, 2013, I returned to B&D Auto and interviewed other employees that worked with KIRCUS. I interviewed Mr. Gary Mitchell, who stated that KIRCUS had recently come to him to borrow a hacksaw. Mr. Mitchell gave the hacksaw to KIRCUS and later observed him using it to cut into a metal pipe with wires attached. Mr. Mitchell showed me the area where KIRCUS had used the hacksaw. I observed a worktable with a vise, and underneath it I noticed freshly cut metal shavings. Mr. Mitchell stated that KIRCUS describes himself as an "Aryan," and he showed me a license plate that KIRCUS had displayed in his workspace. This license plate had been defaced with Nazi Swastika symbols, and the words "Fuck America" had been written over the words "God Bless America" near the bottom of the license plate. Mr. Mitchell stated that KIRCUS had recently started to use threatening language, telling him, for example, that he wanted to "kill all those niggers at the half-way house by blowing them up." Mr. Mitchell also stated that, during one recent night after work, KIRCUS purchased a motorcycle without

3



the consent of the half-way house, explaining that he was planning to escape from custody that night. KIRCUS told Mr. Mitchell, "I want to blow up that bitch in Georgia that turned me in the first time." Mr. Mitchell stated that KIRCUS had confided in him that he started smoking crack and showed him a pill bottle containing $2,300 that he was hiding at B&D Auto to keep it away from the half-way house. When he asked what the money was being saved for, KIRCUS replied, "to buy guns with." Mr. Mitchell stated that, after that day, KIRCUS approached him on more than one occasion about buying a gun for him with the money.

16. After speaking with Mr. Mitchell, I interviewed Mr. Ricardo Pastrana, another employee at B&D Auto who worked with KIRCUS. Mr. Pastrana stated that on August 9, 2013, KIRCUS was acting very strangely and walking around with a metal mesh tube in his hands. Mr. Pastrana estimated that the tube was approximately 12" long and 2" in diameter and wrapped in metal wire. Mr. Pastrana thought it was unusual because it did not appear to be any car part he had ever seen before. I then showed Mr. Pastrana a photograph of the wire-mesh screen that was found in KIRCUS's toolbox, and he positively identified it as the item KIRCUS was walking around with. (It should be noted that during render-safe procedures on the IED, it was determined that this wire-mesh screen could only be obtained by cutting open a live airbag cylinder and removing the explosive propellant, which would then allow access to the screen.)

17. While at B&D Auto, I was approached by another employee, Mr. Matt Owens, who stated that he had noticed a red-colored powder on a make-shift work bench near KIRCUS's work area. Mr. Owens took me to this area where I observed a red-colored powder consistent with the crushed airbag propellant recovered from the device during the render-safe procedure. I collected a sample of the powder as evidence, which I later submitted to the ATF Forensic Laboratory in Atlanta, Georgia.

18. On September 17, 2013, I met with ATF Explosives Enforcement Officer (EEO) Walter "Lee" Conklin for the purpose of viewing the evidence in this investigation. EEO Conklin and I fired the remaining two electric detonators from the IED's. Both detonators functioned when an electric current was supplied. Based on the evidence recovered, it was the opinion of EEO Conklin and myself that the IED meets the definition of a destructive device as defined in Title 26, U.S.C. § 5845(f).

19. On September 20, 2013, I received a telephone call from ATF Forensic Chemist Lloyd Erwin, who is stationed at the ATF Forensic Laboratory in Atlanta, Georgia. Both samples of the crushed red-colored powder recovered from the IED, as well as the powder sample found on the workbench in KIRCUS's work area, were tested for the



presence of explosives. All samples tested positive for Sodium Azide and Iron Oxide, which is classified as an explosive mixture under 18 U.S.C. § 841(c).

20. On September 30, 2013, I listened to audio recordings of telephone calls made by James KIRCUS from the Cullman County Jail to his mother, Ms. Joyce Bailey, who resides in Georgia. When Ms. Bailey was inquiring about why KIRCUS was moved from the half-way house to the Cullman County Jail, KIRCUS admitted to her that he had detonated airbag cylinders with a battery. On another date, a conversation between KIRCUS and his mother became hostile when KIRCUS learned that, following his release from federal custody on October 4, 2013, he would be required to remain in Birmingham for supervision by the U.S. Probation Office. KIRCUS told his mother that he "didn't care what U.S. Probation says," and added, "I am not staying in Birmingham when I get out."

21. On October 1, 2013, I submitted a request to the ATF National Firearms Act Branch (NFA) to query the National Firearms Registration and Transfer Record for any items registered to James KIRCUS. The search yielded a negative result.

Special Agent Jay Bagwell

Subscribed and sworn before me this the 3rd day of October, 2013

Madeline H. Haikala, U.S. Magistrate Judge